UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TATA STEEL, LTD.<br>Bombay House,<br>24, Homi Mody Street<br>Mumbai - 400 001 | CASE NO.<br><br>JUDGE |
| Plaintiff,<br>vs. | COMPLAINT<br>[JURY DEMAND] |
| FEDERAL MARITIME TERMINALS, INC.<br>1000 de la Gauchetière West<br>Suite 3500<br>Montreal, QC  H3B 4W5<br>Canada | |
| Defendant. | |

_____

Now comes Plaintiff, by and through undersigned counsel, and for its Complaint against the Defendant named herein, alleges upon information and belief as follows:

## SUBJECT MATTER JURISDICTION

1. This Honorable Court possesses subject matter jurisdiction over the within action pursuant to Title 28 U.S.C. §1332 on the basis that there is complete diversity of citizenship amongst the parties named herein, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

2. In the alternative, this Honorable Court also possesses subject matter jurisdiction over the within action pursuant to Title 28 U.S.C. §1333(a) on the basis that the contract which governs the rights and liabilities of the parties herein involves the transportation of cargo by vessel on the navigable waters of the United States and thus constitutes a maritime contract, and/or the acts and omissions which form the subject-matter of this Complaint occurred on the

navigable waters of the United States on a dock/pier/wharf immediately connected thereto, which acts and/or omissions had the potential of adversely affecting maritime commerce. Moreover, the res which forms the subject-matter of this Complaint is or was located within the territorial boundaries of the forum Court.

**PERSONAL JURISDICTION**

3. This Honorable Court possesses in personam jurisdiction over the Defendant named herein on the basis that Defendant's acts and omissions which caused Plaintiff's alleged damages, and which form the subject matter of this action, occurred or arose on the navigable waters or on docks/wharves/piers immediately adjacent thereto, which are within the territorial jurisdiction of the forum Court.

**VENUE**

4. Venue is proper in the forum Court pursuant to Title 28 U.S.C. §1391(b)(1) and §1371(c) (2) on the basis that the within forum is a judicial district where the sole Defendant resides, and on pursuant to Title 28 U.S.C. §1391(b)(2) the basis that a substantial part of the events or omissions giving rise to the claims alleged herein occurred within the territorial jurisdiction of the forum Court.

**PARTIES**

5. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 5, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

6. At all times relevant and material herein, Plaintiff TATA STEEL [hereinafter "TATA"] was and is a foreign corporation, with a domicile located in Mumbai, India, and which is licensed to transact business in international trade, including the United States and on the

navigable waters of the Great Lakes adjacent to the State of Ohio, including Lake Erie, and which maintains an office and place of business located at 475 North Martindale Road, Suite 400, Schaumburg, Illinois 60173.

7. At all times relevant and material herein, Defendant FEDERAL MARITIME TERMINALS [hereinafter "FMT" and also known as or doing business as "FEDMAR"] was and is a foreign corporation, with a domicile located in Montreal, Canada, and which is licensed to transact business within the State of Ohio, engaged in the business of operating maritime terminals docks/wharves/piers located on the navigable waters of the Great Lakes, including Lake Erie, Port of Cleveland, Ohio, and transacting maritime commerce, including but not limited to providing stevedoring and longshoring services to foreign flagged vessels and offloading and warehousing of steel cargo. FMT maintains an office and principle place of business located at 775 Erieside Ave., Cleveland, OH 44114.

## FACTS

8. On or before October 17, 2014, TATA and FMT entered into a maritime contract for stevedoring, longshoring and warehousing services which included the safe handling, off-loading, storage, stacking, securing and warehousing of various steel cargoes owned by TATA until shipped to the ultimate consignee. A copy of said maritime contract is attached hereto as Exhibit "1" and incorporated herein as if fully re-written. Said maritime contract obligated Defendant to safely handle said steel cargo while off-loading same from vessels and to affirmatively prevent damage thereto while said steel cargo was in Defendant's sole possession, custody and control.

9. The maritime contract referenced herein required Defendant to provide offloading services of steel cargo owned by Plaintiff [coils and hot-rolled/cold-rolled sheet] and for the safe

storage thereof. While handling the cargoes referenced herein at various ports located on the Great Lakes or its tributaries, Defendant failed to prevent damage to said cargoes or directly caused damage thereto by its own acts or omissions. Defendant's operations personnel and employees struck the cargo with forklifts or improperly stacked them or failed to secure them, thus allowing them to topple, all of which caused them to sustain various forms of damage, including but not limited to, deformation damage.

10. The claims made herein pursuant to the aforesaid maritime contract variously include, but are not limited to, the following:

A. Claim No. 140911/515051 [coil 0295042; coil 43477A] carried aboard the M/V JUNO and the subject of a Survey and Report conducted at the port of Cleveland, Ohio, on or about October 24, 2014 [a copy of which is attached hereto as Exhibit "2" and incorporated herein as if fully written]. These coils sustained deformation damage when they were dropped during discharged, due to the negligent operation of unloading equipment by FMT employees and/or inattention and recklessness of the operator thereof. The cargo discharged and handled by Defendant at the Port of Cleveland is the subject of an MTO Schedule, a copy of is attached hereto as Exhibit "3" and incorporated herein as if fully re-written.

B. Claim No. 141047 [coil 441054B], Claim No. 141033 [coil 3480155PA; coil 3480356PA] carried aboard the M/V ISOLDA and the subject of a Survey and Report conducted at the port of Burns Harbor, Indiana, on or about November 17, 2014 [a copy of which is attached hereto as Exhibit "4" and incorporated herein as if fully written]. These coils sustained deformation damage when they were either dropped or hit by a fork lift and toppled, due to the negligent operation of said forklift by FMT employees and/or inattention and recklessness of the operator thereof.

C. Claim No. 140147/515057 [coil 441054B] carried aboard the M/V MAMRY and the subject of a Survey and Report conducted at the port of Milwaukee, Wisconsin, on or about December 9, 2014 [a copy of which is attached hereto as Exhibit "5" and incorporated herein as if fully written]. This coil sustained deformation damage when it was either dropped or hit by a fork lift and toppled, due to the negligent operation of said forklift by FMT employees and/or inattention and recklessness of the operator thereof.

D. Claim No. 140851/515053 [coil 432621A] carried aboard the M/V ZIEMIA LODZKA. This coil sustained deformation damage when it was hit by a fork lift due to the negligent

        operation of said forklift by FMT employees and/or inattention and recklessness of the operator thereof.

E.        Claim No. 140515/515052 [coil 3451747PA] carried aboard the M/V ISADORA. This coil sustained deformation damage when it was hit by a fork lift due to the negligent operation of said forklift by FMT employees and/or inattention and recklessness of the operator thereof.

F.        Claim No. 140657/515055 [coil 422818CA] carried aboard the M/V ISOLDA and the subject of a Survey and Report conducted at the port of Burns Harbor, Indiana, on or about August 11, 2014 [Exhibit "6"]. This coil sustained damage when it was hit by a fork lift in the FMT warehouse and suffered undue oxidation and rust, due to the negligent operation of said forklift and/or inattention and recklessness of the operator thereof, and/or improper storage by FMT employees.

G.        Claim No. 515054 [coil 632617BA] carried aboard the M/V ZIEMIA LODZKA. This coil sustained deformation damage and was "out-of-round" which prevented it from being used in a machine to unwind the coils rendering said coil scrap. The damage was caused when it tipped over due to the negligent and/or reckless stacking, securing and storage thereof by FMT employees.

H.        Claim No. 140928 [coil C17909000] carried aboard the M/V WICKO. This coil sustained deformation damage when it was dropped while being loaded onto a truck in Burns Harbor, Indiana due to the negligent and/or reckless operation of loading equipment by FMT employees.

I.        Claim No. 141013 [coil 436319BA] carried aboard the M/V SOLINA. This coil sustained deformation damage when it fell off of a truck due to the negligent and/or reckless loading and/or securing of said cargo by FMT employees.

        11.        The various claims, cargoes damaged and the nature and quantum of the damages sustained are more fully set forth and specifically identified in Exhibit "7", which is attached hereto and incorporated herein as if fully rewritten.

        12.        The damage caused to the steel cargoes referenced herein reduced the value thereof to the ultimate consignee and resulted either in a total loss or value as mere "scrap".

        13.        A portion of the res remains within the territorial jurisdiction of this Honorable Court

14. This type of incident can affect commercial maritime activity by causing damaged cargo to be stacked and stored on docks/wharves/piers while the parties argue over liability, damages, possession and custody, thus removing available dock space for other cargo to be landed, thus causing vessel delays, congregation in port and increasing the potential for collision from such vessel congestion.

15. Plaintiff gave the appropriate and timely notice of the alleged cargo damage, including the type and nature thereof, upon learning of the damage and obtaining the necessary surveys via emails and other communications.

16. In the alternative, the Defendant suffered no prejudice concerning any alleged lack of notice since it was on notice of its own acts and omissions constituting negligence and which proximately caused the property damage alleged herein.  Therefore, the Defendant already possessed notice of said damage or was otherwise aware of same, thus rendering any contractual "Notice Provision" without substantive affect.

## CAUSES OF ACTION

I. **GENERAL MARITIME NEGLIGENCE**

17. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 17, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

18. Defendant owed a duty to Plaintiff to exercise reasonable care and to safely handle, off-load, discharge, secure and store certain steel cargoes referenced herein.

19. Defendant breached the aforesaid duties by failing to exercise reasonable care and by failing to prevent damage or directly causing damage to the cargoes referenced herein through

its inattention, improper handling, improper securing and improper storage, and by misfeasance, nonfeasance and malfeasance in the operation of its cargo handling machinery, incompetent operators, and improper work instructions and improper oversight.

20. As a direct and/or proximate consequence of Defendant's negligence in the handling of cargo, Plaintiff suffered commercial financial loss, and is thus entitled to an award of monetary damages.

## II.     BREACH OF CONTRACT

21. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 21, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

22. Plaintiff entered into a maritime contract with Defendant which obligated Defendant to safely handle and offload, store, secure and warehouse certain steel cargoes owned by Plaintiff, and to prevent harm/damage thereto. A copy of said Contract is attached hereto and incorporated herein as Exhibit "1".

23. Defendant breached the aforesaid contract by failing to prevent damage to the steel cargoes referenced herein and/or by directly causing damage to said cargoes by its own mishandling of same.

24. As a direct consequence of Defendant's breach of contract, Plaintiff has sustained the economic and consequential damages alleged herein.

## III.    WARRANTY OF WORKMANLIKE PERFORMANCE

25. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 25, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

26. Defendant owed Plaintiff an Implied warranty and duty to exercise reasonable care in the handling, offloading, storage and securing of the steel cargo referenced herein to conduct its operations with respect to said steel cargo with workmanlike performance, and to safely handle said cargo and prevent it from sustaining damages. While discharging/offloading, handling, securing and storing the said steel cargo, Defendant maintained exclusive possession, custody and control of the same, and unilaterally determined all methods and manner of handling same in a safe and workmanlike manner.

27. Defendant breached the Implied Warranty of Workmanlike Performance by failing to exercise reasonable care in its operations, failing to keep the cargo safe from damage while in its exclusive possession, custody and control, and otherwise causing damage to said cargo by its misfeasance, malfeasance, nonfeasance and/or reckless acts/omissions.

28. As a direct and/or proximate consequence of Defendant's breach of the Warranty of Workmanlike Performance, Plaintiff's cargo was damaged and it sustained the economic and consequential losses referenced herein. Defendant is strictly liable for said cargo damage and economic damages.

**IV.  BAILMENT**

29. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 29, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

30. Defendant took and maintained exclusive possession, custody and control of the steel cargo referenced herein once it began the unloading operation. Defendant did intend to possess the steel cargo referenced herein and actually did possess it exclusively when the damage

alleged herein occurred. Defendant was therefore a bailee who owed a duty to exercise reasonable care for the safe storage and keeping of the cargo while in its possession.

31. Defendant breached its duties attendant to bailment by failing to keep the cargo safe from harm and/or directly causing harm to the said steel cargo by its own malfeasance, misfeasance or nonfeasance.

32. As a direct and/or proximate consequence of its breach of bailment and failure to keep the steel cargo safe from harm while in its' exclusive possession, custody and control, Defendant is strictly liable for all economic and consequential damages to the steel cargo referenced herein.

## V.     GROSS NEGLIGENCE

33. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 33, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

34. Defendant acted with reckless disregarded for the safe handling and safe condition of Plaintiff's cargo, and was willful and wanton in its mishandling of said cargo.

35. As a direct and/or proximate consequence of Defendant's negligence in the handling of cargo, Plaintiff suffered commercial financial loss, and is thus entitled to punitive damages.

## VI.    NEGLIGENCE PER SE

36. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 36, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

37. The Defendant was tendered exclusive possession, custody and control of the cargo referenced herein, and but for the existence of negligence in the performance of Defendant's terminal/warehouse and stevedoring operations, the damage referenced herein could not have occurred.  Defendant was negligent *per se*.

38. As a direct and/or proximate consequence of Defendant's negligence in the handling of cargo, Plaintiff suffered commercial financial loss, and is thus entitled to an award of monetary damages.

### VII.  WAIVER/ESTOPPEL

39. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 39, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

40. Defendant maintained a course of dealing and course of performance whereby it waived notice for prior cargo damage claims made by Plaintiff.  Defendant is therefore equitably estopped from claiming and/or taking advantage of any "notice" provision as it has waived same. Defendant also maintained a course of dealing and course of performance whereby it paid prior cargo damage claims made by Plaintiff after the expiration of the contractual limitations period. Defendant is therefore equitably stopped from claiming and/or taking advantage of any "limitation" provision as it has waived same.

### DAMAGES

41. Plaintiff re-alleges each and every, all and singular, the allegations set forth in paragraphs 1 through 41, inclusive of this Complaint as if fully re-written, and further alleges upon information and belief as follows:

42. Plaintiff has taken all necessary and appropriate steps to mitigate its damages.

43. As a direct and/or proximate consequence of the Defendants' Breach of Contract, Breach of the Warranty of Workmanlike Performance, Negligence and/or Gross Negligence, and Breach of Bailment, Plaintiff has sustained the following damages, including but not limited to:

A. Economic and consequential damages including, but not limited to, reduction in the value of the steel cargo, physical damage to steel coils, surveyor charges, additional handling and consignment charges.

B. Non-economic damages including, but not limited to, harm to business reputation and good will.

C. Punitive damages for Defendant's gross negligence and reckless handling of cargo.

## CONCLUSION

Wherefore, Plaintiff prays for a judgment against Defendant in excess of $75,000.00 exclusive of interest and costs, together with attorneys fees, the costs of the within action, compensatory damages, consequential and incidental damages, punitive damages, pre-judgment interest at the statutory rate and such other and further relief to which Plaintiff may be entitled at law, in admiralty or in equity.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all allegations set forth in this Complaint.

Respectfully submitted,

**RAY, ROBINSON, CARLE & DAVIES P.L.L.**

By: /s/ Christopher D. Kuebler
Christopher D. Kuebler (0004650)
E-mail: ckuebler@rayrob.com
Robert T. Coniam (0034623)
E-mail: rconiam@rayrob.com

Corporate Plaza II, Suite 300
6480 Rockside Woods Blvd So.
Cleveland OH 44131-2222
216-236-2400
Fax: 216-236-2409
Attorneys for Plaintiff, TATA Steel, Ltd.